JOURNAL ENTRY AND OPINION
Anthony Porter appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of two counts of aggravated robbery and one count of grand theft, motor vehicle, all of which contained a firearm specification. For the reasons set forth below, we affirm the judgment of the trial court.
The circumstances leading to Porter's arrest and conviction stemmed from three separate incidents which had been joined in separate indictments in this case for purposes of trial.
The first incident occurred on June 6, 1997, when eighty-four year old Evelyn Price and her grandson, Brian Johnson, returned to their Euclid, Ohio, home around 11:30 p.m., following a visit to the emergency room at Euclid Meridia Hospital. Price pulled into her driveway and Brian exited the car to open the garage door for her; however, before he could do so, a black male wearing a baseball cap and carrying a silver cowboy-type gun appeared and pointed it at Brian demanding all of his money; the gunman then approached the driver side of the car and demanded money from Price. She then gave the man her purse and he fled. Brian called the Euclid Police, who responded and obtained Price's statement. As part of his follow-up investigation, Detective Michael Grida went to Price's home on June 24, 1997, and showed her several photo arrays; at that time, Price identified Anthony Porter from two separate photo displays. At trial, however, Price could not positively identify Porter as the man who robbed her.
The second incident occurred shortly after midnight on June 7, 1997, in Euclid, Ohio. As William Weimer walked to the bus stop on St. Clair near Babbit Road, in Euclid, Ohio, he noticed two black males stop their vehicle beneath the railroad underpass and turn off the engine and head lights. After a few minutes, the vehicle proceeded south on Babbitt Road, pulled into a parking lot, and continued driving south on Babbitt Road again. The men then went around the block, turned off of East 256th street, proceeded north on Babbitt Road, and stopped on the west side of the road. The passenger exited the vehicle, approached Weimer in the middle of the street, pulled out a silver, cowboy-type gun and demanded money. When Weimer displayed pepper spray, the man ran back to the vehicle.
The third incident occurred on the evening of June 10, 1997, when Dennis Burke, driving home from work, noticed a car in front of him with three people in it driving suspiciously slow. As he approached the side door to his home, two black males, one of them wearing a baseball cap, confronted him, pointed a gun at his head and demanded his money and car keys. Burke then threw his money clip on the ground and one of the assailants took his car keys and jewelry. The driver of Burke's car nearly ran him over and in the process, hit the side of the house next door. After the men left, Burke called the police and later that night, the police drove him to Aviation High School near East 55th
and the shoreway to identify his car. When he arrived, Burke identified a man the police had detained as one of the assailants who robbed him. The police later identified Mario Welch, a juvenile, as the male Burke identified. At trial, however, Burke did not identify Porter as one of the individuals who accosted him on June 10, 1997.
Detective Robert Pestak of the Euclid Police Department questioned Welch as to the identity of the other two individuals involved in the robbery of Burke and Welch provided the police with the names of "Amp" and "Pee-Wee". After a lengthy investigation, the police determined that the person otherwise known as "Amp" is Anthony Porter. Euclid Police subsequently arrested Porter in connection with both incidents and the grand jury indicted him on three counts of aggravated robbery and one count of grand theft, motor vehicle, all with firearms specifications.
The court commenced a jury trial on August 3, 1998. At the close of the state's case, the court granted Porter's Crim.R. 29 motion as to the charge of aggravated robbery involving William Weimer. Following its deliberation, the jury found Porter guilty of all remaining counts. On September 24, 1998, the court imposed sentence and on the same day, Porter filed a motion for a new trial, which the court denied. In support of his motion for a new trial, Porter offered the affidavit of Sandra Welch, Mario's mother, who stated that the police and prosecutors attempted to obtain a statement from him in her absence, that he had told her that Porter had not been involved in the crime against Burke, and that the prosecutor told him he would be held in contempt if he failed to testify.
Porter now appeals and assigns three errors for our review.
The first states:
 THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT'S MOTION FOR NEW TRIAL.
Here, Porter contends that the court erred in overruling his motion for a new trial because the prosecutor threatened Mario Welch, and thereby obtained false testimony against him, and further, that the affidavit of Sandra Welch established newly discovered evidence which would exonerate him.
The state, however, urges that it did not threaten Mario Welch and that because Sandra Welch testified on behalf of the defense, the alleged newly discovered evidence could have been obtained during trial.
The issue, then, for our review concerns whether the court erred in overruling Porter's motion for new trial.
The Supreme Court has held that a ruling on a motion for a new trial is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. State v.Hill (1992), 64 Ohio St.3d 313; State v. Schiebel (1990),55 Ohio St.3d 71.
In State v. Petro (1947), 148 Ohio St. 505, the court stated:
 To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.
Further, Cim.R. 33 states in pertinent part:
 A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
* * *
 (6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. * * *.
A review of the transcript in this case reveals the following colloquy occurred during the cross-examination of Mario Welch:
 Q. (By the Prosecutor): Mario, do you know what contempt is?
A. Actually, no.
 Q. Okay. At any time, did anyone — did you testify truthfully yesterday?
A. Yes.
Q. All right. And you told [sic] to tell the truth?
A. Yes.
 Q. And were you told that if you didn't take the stand and tell the truth a contempt action may be brought against you?
A. Excuse me?
 Q. You were told that your failure to take the stand may bring contempt charges against you; is that correct?
A. Yes.
Q. But you told the truth?
A. Yes.
 Q. Did at any time, did the State or any one from the State tell you what to do?
A. No.
 Q. Did you tell the truth when you gave Detective Figueira a statement on June 25th of `97?
* * *
A. Yes.
 Q. And did you point out the person on June 25th in a lineup?
A. Yes.
Q. Did you point to a person?
A. Yes.
Q. And were you sure then?
A. Yes.
Q. And you knew that person's name was Amp, correct?
A. Yes.
The affidavit submitted by Sandra Welch, Mario's mother, in support of the motion for new trial, alleges that the police and prosecutor attempted to obtain a statement from him in her absence, that he told her that Porter had not been involved in the robberies, and that the prosecutor informed him that if he failed to testify, he would be held in contempt of court. Porter maintains that the statements contained in this affidavit constitute newly discovered evidence that could not have been produced at the time of trial.
After reviewing the transcript of the trial testimony, we cannot conclude that the affidavit of Sandra Welch presents newly discovered evidence because it does not fit the definition as promulgated in Petro, supra.
Further, the conduct of the prosecuting attorney in this case did not threaten Welch but rather merely advised him of a legal consequence for failing to obey a subpoena. This did not deprive Porter of a fair trial. Therefore, this assignment of error is not well taken.
The second assignment of error states:
 THE TRIAL COURT ERRED BY OVERRULING THE DEFENSE MOTION FOR SEVERANCE PURSUANT TO OHIO CRIM.R. 14.
Porter claims that the court erred in failing to sever these offenses for trial because he asserts the incidents occurred several days apart and the state failed to produce any witness who could positively identify him as one of the perpetrators.
The state, however, maintains that Porter failed to demonstrate that joinder of these two offenses prejudiced him or that the court abused its discretion in denying his motion to sever.
The issue, then, concerns whether the trial court abused its discretion when it overruled Porter's motion for severance pursuant to Crim.R. 14.
Crim.R. 8 (A) provides:
 Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.
Further, Crim.R. 14 provides in part:
 If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment * * * the court shall order an election or separate trial of counts * * *.
When severance of the counts due to prejudicial misjoinder is requested, the state can counter claims of prejudice by two methods. The first method utilizes the "other acts" test where the state argues that it could have introduced evidence of the separate count under the "other acts" portion of Evid.R. 404 (B), if the counts were severed. See State v. Lott (1990), 51 Ohio St.3d 160. The second method applies the "joinder" test where the state is not required to meet the stricter "other acts" admissibility test, but instead is only required to show that evidence of each crime joined at trial is simple and direct. Id.
Additionally, the court in Lott stated:
 [W]hen simple and direct evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as "other acts" under Evid.R. 404 (B). (citation omitted).
In this case, the trial court tried the three counts of aggravated robbery which had been presented in the indictment. These incidents occurred on June sixth, seventh, and tenth, 1997, all in the city of Euclid, and all perpetrated by an individual wearing a baseball cap and carrying a silver, cowboy-type weapon. In addition, they all occurred at night and are of the same character. Porter has failed to demonstrate prejudice due to this joinder. Accordingly, this assignment of error is overruled.
The third assignment of error states:
 THE CONVICTIONS ARE AGAINST THE WEIGHT OF THE EVIDENCE.
Porter maintains here that the evidence does not sustain his conviction because none of the state's witnesses were able to identify Porter in court.
The state, however, maintains that Evelyn Price did identify Porter through a photo array two weeks after the incident and that Burke identified one of Porter's accomplices on the night of the attack, who in turn directed the police to Porter.
The issue, then, concerns whether Porter's conviction is against the manifest weight of the evidence presented at trial.
In State v. Martin (1983), 20 Ohio App.3d 172, the court stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 Additionally, the court in State v. Thompkins (1997), 78 Ohio St.3d 380, stated:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicated clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
Further, in Tibbs v. Florida (1982), 457 U.S. 31, the court stated:
 A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented sufficient evidence to support conviction and has persuaded the jury to convict.
In this case, the state assumed the burden to prove Porter's guilt beyond a reasonable doubt on separate charges of aggravated robbery on June 6, and June 10, 1997 and grand theft. Aggravated robbery is defined by R.C. 2911.01, which states in pertinent part:
 (A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or uses it * * *.
Additionally, grand theft is defined by R.C. 2913.02, which states in pertinent part:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent * * *.
In support of its burden, the state offered the testimony of Evelyn Price, who stated that she identified Porter as the male who held her and her grandson at gun point and robbed her approximately two weeks after the incident, by way of a photo array, and that perpetrator wore a baseball cap and brandished a silver cowboy-type gun. However, at trial, more than a year later, she could not identify him in court.
The state also offered the testimony of Dennis Burke, who stated that he identified Mario Welch as one of the males who robbed him and stole his car, hours after the incident. However, he also could not identify Porter in court on the day of trial.
Additionally, the state offered the testimony of Mario Welch, who identified Porter as the male otherwise known as "Amp". Further, Mario stated that Porter had been involved in robbing Burke, identified Porter in court and in a photo array.
The state also offered the testimony of Detective Brent Figueira, who stated that he interviewed Mario, that when he stopped Porter for questioning and showed him a picture of a male known as "Amp" Porter stated "Where did you get a picture of me?", and that Porter fit the physical description provided by all the witnesses.
The defense offered the testimony of Mario Welch, who, in response to defense counsel question, stated that the prosecutor threatened to charge him with contempt if he did not testify, and who recanted his identification of Porter. However, on cross-examination, Mario recanted once again, reverting back to his original testimony and positive identification of Porter.
The defense also offered the testimony of Sandra Welch, Mario's mother, who stated that he did not know who committed these crimes; Sheena Pruitt, Porter's alibi witness, testified that she and Porter had been together on the night of June 8, 1997, even though the notice of alibi filed stated that Pruitt would testify that she and Porter had been together on the night of June 7, 1997; and Anthony Porter, who stated that he did not commit these offenses and had been with his girlfriend, Sheena, on the night of June 7, 1997.
Therefore, after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that the jury, in resolving conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. Accordingly, this assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON, J., and MICHAEL J. CORRIGAN, J., CONCUR.
 ______________________________ TERRENCE O'DONNELL PRESIDING JUDGE